IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID ALFANO, STEVEN ALFANO,
LISA ALFANO, and MARY
ALFANO-LUPTON,

        Plaintiffs,

        3:12-CV-02319-PK

v.

        OPINION AND ORDER[1]

CHRIS FARLEY, KATHY ANDREAS,
ZIGGY SZCCZEPANSKI, HELEN IRELAND,
JIM WILLIS, PAT TERRELL, and JOHN AND
JANE DOES #1-10, employees of the Oregon
Department of Veterans' Affairs,

        Defendants.

---

[1] A findings and recommendation consistent with the below was entered on March 3, 2014. On April 25, 2014, the district court remanded the matter to me with instructions to enter the findings and recommendation as an opinion and order on the basis that all parties to the action consented to the jurisdiction of a magistrate judge. After the district court remanded the matter, plaintiffs moved to voluntarily dismiss the unserved defendants, including the "Doe" defendants and Pat Terrell. Thus, regardless of the district court's conclusion that unserved defendants are not "parties" within the meaning of 28 U.S.C. § 636(c), I now have full consent.

Page 1 - OPINION AND ORDER

PAPAK, Magistrate Judge:

This is an action brought under 42 U.S.C. § 1983 alleging violations of plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are four adult children of Ben Alfano.[2] They seek redress from defendants for conduct that occurred between December 2010 and February 2011—the time period between when their father was moved from Raleigh Hills Assisted Living ("Raleigh Hills") to the date he died. The gravamen of plaintiffs' claims is that Chris Farley, Mr. Alfano's court-appointed guardian, acted in concert with the Oregon Department of Veterans' Affairs ("ODVA") to deprive plaintiffs of their constitutional rights. Now before the court are Farley's amended motion to dismiss plaintiffs' third amended complaint (#62) and request for judicial notice (#65). For the reasons set forth below, the motion to dismiss and request for judicial notice are granted and the third amended complaint is dismissed in its entirety.

## FACTUAL BACKGROUND

I note at the outset that plaintiffs' third amended complaint is far from a model of clarity both in its factual allegations and, more particularly, in relating those allegations to appropriate claims for relief. As an example, plaintiffs repeatedly insist that their claims are based on events occurring between December 2010 and February 2011, but they also appear to rely on events that occurred outside this time frame. Further, although the court granted plaintiffs' motion to dismiss defendant Richard Pagnano, plaintiffs continue to refer to him as a defendant in the body of the complaint and devote several pages to allegations concerning his conduct. *See, e.g.*, Third

---

[2] Kristina Plagmann, the eldest of Mr. Alfano's children and the personal representative of Mr. Alfano's estate, is not a party to this case.

Page 2 - OPINION AND ORDER

Amended Complaint, #58, ¶¶ 65-74. Likewise, although the court granted plaintiffs' motion to dismiss defendant Sybille Baer, plaintiffs continue to refer to her as a defendant in the body of the complaint. *See id.* ¶ 106. With that in mind, I relate the following allegations from the third amended complaint along with facts from documents judicially noticed by the court.[3]

## I. Mr. Alfano's Accident and the ODVA Conservatorship

In 2006, Mr. Alfano was hit by a car, resulting in the loss of one of his legs. *Id.* ¶ 21. He filed a lawsuit and received a settlement of "almost $1,000,000." *Id.* At the time of the accident, Mr. Alfano was in his late sixties and had "significant medical needs," including multiple sclerosis. *Id.* ¶¶ 18, 20. After the accident, Mr. Alfano moved to Raleigh Hills, an assisted living facility. *Id.* ¶ 26.

Some years before the accident, the ODVA had been appointed as conservator to manage Mr. Alfano's financial affairs. *Id.* ¶¶ 19, 24. Plaintiffs allege that prior to the accident and settlement award, the "ODVA had neglected [Mr.] Alfano's needs and had failed to respond to numerous" unspecified requests. *Id.* ¶ 29. After the settlement award, plaintiffs assert that "the ODVA took an aggressive interest in Mr. Alfano's case and finances." *Id.* ¶ 28. Plaintiffs disagreed with many of the ODVA's decisions regarding the management of Mr. Alfano's money, including: (1) approving Mr. Alfano's request to purchase an expensive watch; (2) approving Mr. Alfano's vacation to Hawaii; and (3) petitioning a court to modify spousal support payments to Mr. Alfano's former wife. *Id.* ¶¶ 81-83.

---

[3] Under Federal Rule of Evidence 201, courts may take judicial notice of documents that are matters of public record or are quasi-public documents. *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). All of the documents provided as exhibits to the Declaration of Matthew J. Kalmanson (#64) are public records subject to judicial notice. Accordingly, Farley's request for judicial notice, which was unopposed by plaintiffs, is granted.

Page 3 - OPINION AND ORDER

## II.     Guardianship of Mr. Alfano

In January 2009, Steven Alfano obtained an ex parte emergency guardianship over his father. *Id.* ¶ 32; Ex. 5, Declaration of Matthew J. Kalmanson ("Kalmanson Decl."), #64-5, at 3. Steven Alfano thereafter sought to indefinitely extend the temporary guardianship. Third Amended Complaint, #58, ¶ 43; Ex. 5, Kalmanson Decl., #64-5, at 1-7. David Alfano later joined the petition for guardianship as an alternate guardian. Ex. 4, Kalmanson Decl., #64-4, at 1. The ODVA objected to Steven and David Alfano's petition and cross-petitioned the court to appoint Farley, a professional fiduciary, as Mr. Alfano's guardian. *Id.* On January 8, 2010, the state-court judge entered a limited judgment appointing Farley as Mr. Alfano's guardian rather than Steven or David Alfano. Ex. 3, Kalmanson Decl., #64-3, at 5-6; *see also* Third Amended Complaint, #58, ¶ 65. Pursuant to her duties as guardian, Farley was "[t]o promote and protect the well-being of" Mr. Alfano and had the power to, among other things, make decisions regarding his health care and his residence and placement. Ex. 4, Kalmanson Decl., #64-4, at 5-6. Farley was also to keep Mr. Alfano's family and the ODVA apprised of Mr. Alfano's physical and medical condition and care. *Id.* at 6-7. On August 11, 2010, the state-court judge entered an amended limited judgment revoking Mr. Alfano's advance directive and authorizing Steven and David Alfano to make end-of-life decisions for their father. *Id.* at 5, 7; *see also* Ex. 3, Kalmanson Decl., #64-3, at 9.

## III.    December 2010 to February 2011

On December 23, 2010, Farley filed a notice of intent to move Mr. Alfano from Raleigh Hills to Park Forest Care Center ("Park Forest"), a skilled nursing facility. Ex. 3, Kalmanson Decl., #64-3, at 10; *see also* Third Amended Complaint, #58, ¶ 92. Plaintiffs did not receive

Page 4 - OPINION AND ORDER

notice of the move. Third Amended Complaint, #58, ¶¶ 91-92. They allege that, on Christmas Day 2010, Pat Terrell, Farley's employee, told staff at Raleigh Hills that Mr. Alfano had a doctor's appointment and she removed him from Raleigh Hills without any of his belongings. *Id.* Later that day, Farley called each plaintiff and told them that she moved Mr. Alfano to Park Forest to better manage his treatment for recurring infections. *Id.* ¶ 92. Plaintiffs filed objections in state court to Mr. Alfano's placement at Park Forest. Ex. 3, Kalmanson Decl., #64-3, at 10.

Plaintiffs allege that while Mr. Alfano was at Park Forest, he was "extremely anxious and scared" and "began calling [p]laintiffs all the time." Third Amended Complaint, #58, ¶ 95. This in turn drove plaintiffs to call Park Forest repeatedly. *Id.* After discovering how much Mr. Alfano had been calling plaintiffs, Farley restricted his phone use. *Id.* ¶ 102. She told plaintiffs that the calls were making Mr. Alfano anxious. *Id.* Farley also put in place visitation restrictions. *Id.* ¶¶ 94, 103.

In late January 2011, Farley informed plaintiffs that she intended to move Mr. Alfano to a "lock-down Alzheimer's unit" at Powell Valley, another nursing facility, purportedly because Park Forest "wanted him removed" after he attempted to escape. *Id.* ¶¶ 103, 105. While Mr. Alfano was at Powell Valley, plaintiffs allege that Farley continued to restrict visits from family and that Mr. Alfano's health deteriorated. *Id.* ¶¶ 105-111. On February 26, 2011, Mr. Alfano died at the age of seventy two following a heart attack. *Id.* ¶¶ 18, 112.

## PROCEDURAL BACKGROUND

Plaintiffs initiated the instant lawsuit on December 22, 2012, alleging that defendants had interfered with their constitutionally protected relationship with their father and had retaliated against them for exercising their right to object to the care of their father. *See* Complaint, #1,

Page 5 - OPINION AND ORDER

¶¶ 65-82. On April 25, 2013, Farley filed her first motion to dismiss (#19). The court heard oral argument on the motion on July 10, 2013. *See* Minutes of Proceedings, #44. Before the court issued its findings and recommendation, the parties agreed that Farley would stay her motion to dismiss pending plaintiffs' filing of a second amended complaint. *See* Order, #50. On August 9, 2013, plaintiffs filed their second amended complaint (#51). On August 12, 2013, plaintiffs filed a corrected second amended complaint (#55). On August 13, 2013, the court held a telephonic conference, at which time it instructed plaintiffs to file another amended complaint correcting various problems. *See* Minutes of Proceedings, #56. On August 16, 2013, plaintiffs filed the third amended complaint.

On September 6, 2013, Farley moved to dismiss plaintiffs' third amended complaint on several grounds and further requested that the court take judicial notice of various public documents. On September 27, 2013, plaintiffs filed a resistance (#72) to the motion to dismiss. On October 11, 2013, Farley filed a reply (#73). On October 17, 2013, the court heard oral argument on the motion to dismiss. *See* Minutes of Proceedings, #74. The matter is fully submitted and ready for decision.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation omitted). Instead, "for a complaint to survive a motion to dismiss, the non-

Page 6 - OPINION AND ORDER

conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In ruling on a Rule 12(b)(6) motion to dismiss, a court must take the complaint's allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Kearns v. Tempe Tech. Inst., Inc.*, 39 F.3d 222, 224 (9th Cir. 1994). Moreover, the "court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

## DISCUSSION

In her memorandum in support of the motion to dismiss, Farley requests that the court dismiss the third amended complaint on the grounds that the court does not have jurisdiction under the *Rooker-Feldman* doctrine, plaintiffs do not state a plausible claim that Farley acted under color of state law, plaintiffs do not state valid claims to relief, Farley is entitled to qualified immunity, Farley is entitled to judicial immunity, and Farley is entitled to witness immunity.[4] In their resistance, plaintiffs only address two arguments—that is, that they fail to state a claim and that they do not state a plausible claim that Farley acted under color of state law. For the reasons set forth below, I grant Farley's motion to dismiss on the bases that plaintiffs' third amended complaint does not state a plausible claim that Farley acted under color of state law and, moreover, that it fails to state valid claims to relief. Alternatively, I grant the motion on qualified-immunity grounds.

---

[4] Farley also notes that plaintiffs do not have standing to assert claims on behalf of the estate, but she does not request that the court dismiss the third amended complaint on this ground.

Page 7 - OPINION AND ORDER

## I. Under Color of State Law

First, Farley argues that plaintiffs fail to adequately allege that she acted under color of state law. Farley contends that Supreme Court and Ninth Circuit Court of Appeals precedent establish that a guardian is not a state actor. Moreover, Farley argues that the joint-action and governmental-nexus exceptions are not satisfied in this case because plaintiffs' allegations that the ODVA controlled or directed Farley are conclusory and made on "information and belief." Plaintiffs respond that the third amended complaint sufficiently alleges that Farley "conspired and work[ed] closely with the ODVA actors to separate Mr. Alfano and his children." Plaintiffs' Resistance to Motion to Dismiss, #72, at 38.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must make sufficient factual allegations that the defendant acted under color of state law. *DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000). Section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation omitted) (internal quotation marks omitted). The court begins with a presumption that conduct by private actors is not taken under color of state law. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011).

As an initial matter, I agree with Farley that, under Ninth Circuit precedent, a guardian, though appointed by a court, is ordinarily not a state actor. *See, e.g., Kirtley v. Rainey*, 326 F.3d 1088, 1093-96 (9th Cir. 2003) (holding that a guardian ad litem appointed by a Washington state court was not a state actor under 42 U.S.C. § 1983). Although it is difficult to discern plaintiffs' exact argument, they do not appear to disagree with that general proposition. Rather, plaintiffs argue that, because Farley abandoned her role as guardian and instead conspired with the ODVA

to deprive plaintiffs of their constitutional rights, Farley acted under color of state law. In light of plaintiffs' argument, *Kirtley* and the line of cases holding guardians are not state actors are not decisive in this case. *See Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994) (noting that, under Supreme Court precedent, a public defender is not a state actor but finding that, because the plaintiff alleged that his public defenders conspired with state actors, the Supreme Court precedent did not end the inquiry).

Thus, the question remains whether plaintiffs have sufficiently alleged that Farley acted under color of state law. The Ninth Circuit has recognized four tests used to identify state action: "'(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus.'" *Kirtley*, 326 F.3d at 1092 (quoting *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835-36 (9th Cir. 1999)). Relevant here are the joint-action and governmental-nexus tests. "The joint action test asks whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (citation omitted) (internal quotation marks omitted). "This requirement can be satisfied either by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *Id.* (citation omitted) (internal quotation marks omitted). Courts also consider whether the state benefitted from the private party's unconstitutional action. *See Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 997 (9th Cir. 2013) (noting that whether the state derives a benefit from the allegedly unconstitutional act is a relevant "joint action consideration"). Under the governmental-nexus test, "the court must find a sufficiently close nexus between the state and the private actor 'so that the action of the latter may be fairly treated as that of the State itself.'"

Page 9 - OPINION AND ORDER

*Jensen v. Lane Cnty.*, 222 F.3d 570, 575 (9th Cir. 2000) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974)). The governmental-nexus test is largely subsumed by the joint-action test. *Naoko Ohno*, 723 F.3d at 995 n.13. "[A] bare allegation of . . . joint action will not overcome a motion to dismiss; the plaintiff must allege facts tending to show that [the private actor] acted under color of state law or authority." *DeGrassi*, 207 F.3d at 647 (quoting *Sykes v. State of Cal. (Dep't of Motor Vehicles)*, 497 F.2d 197, 202 (9th Cir. 1974)) (internal quotation marks omitted); *see also Hunt*, 17 F.3d at 1268 ("[M]ere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." (citation omitted) (internal quotation marks omitted)).

In this case, plaintiffs allege that Farley acted to isolate Mr. Alfano from his family because the ODVA told her to do so. Specifically, the third amended complaint alleges that:

(1) In late 2008, Ziggy Szcczepanski, Mr. Alfano's ODVA caseworker, began communicating with Farley about her becoming Mr. Alfano's professional guardian. Third Amended Complaint, #58, ¶ 33.

(2) Szcczepanski and Farley knew each other "from other professional organizations" and "Szcczepanski used . . . Farley, upon information and belief, because she would take over cases which did not require a professional guardian and would work with him to isolate the family from the protected person and incur unnecessary expenses, [and] facilitate unneeded moves based on false claims against the family." *Id.* ¶ 34.

(3) Szcczepanski communicated false information to Farley regarding Mr. Alfano and plaintiffs, which Farley then passed on to the state court, knowing that such information was false. *Id.* ¶ 40; *see also id.* ¶ 51 ("[D]iscovery will demonstrate that . . . Farley may have already contacted [the state-court judge] and the VA who had ex parte contact with the court and provided false information outside of the record about [plaintiffs] without notice to anyone and without due process of law.").

(4) While a court visitor was conducting a probate investigation, Farley told the court visitor that "Szcczepanski requested her specifically because she would do what the VA needed done" and that "she had a close and long standing relationship with the VA and that they frequently hand picked her for the 'difficult cases.'" *Id.* ¶¶ 41, 46; *see also id.* ¶ 79.

(5) In talking with the court visitor, Farley also referred to herself as the "[c]onservator," although the ODVA was in fact Mr. Alfano's conservator, and Farley told the court visitor that she would not allow Mr. Alfano's family to take financial advantage of him. *Id.* ¶ 54.

(6) After the state court appointed Farley as Mr. Alfano's professional guardian, "the VA used Farley to place her invisible boundaries around the family so that they could no longer have any information on the care or daily life of their father." *Id.* ¶ 89; *see also id.* ¶ 58 ("It is believed that evidence will establish that [Szcczepanski] asked . . . Farley to isolate Mr. Alfano from his family.").

Page 11 - OPINION AND ORDER

> (7) After Mr. Alfano attempted to escape from the Park Forest facility, Farley moved Alfano to Powell Valley "'because the VA wanted her to.'" *Id.* ¶ 103 (emphasis omitted).

I find that these allegations are insufficient to state a plausible claim that Farley acted under color of state law. Even if the ODVA sought to isolate Mr. Alfano from his family for the purpose of interfering with plaintiffs' relationship with their father, the third amended complaint does not adequately allege that Farley shared that goal. All of Farley's actions could be based on her own judgment, albeit a judgment shaped by the false information the ODVA allegedly gave her, that Mr. Alfano needed to be protected from his children. While there does appear to be a certain amount of cooperation between Farley and the ODVA, Farley persuasively argues that such a relationship is not out of the ordinary for a guardian and a conservator. *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) ("When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." (quoting *Iqbal*, 556 U.S. at 678)).

Moreover, while plaintiffs suggest that the ODVA benefitted financially from actively managing Mr. Alfano's finances, *see* Third Amended Complaint, #58, ¶ 28, they fail to allege how the specific acts undertaken by Farley benefitted the ODVA. *See Tsao*, 698 F.3d at 1140 ("Particularly relevant here is the maxim that if the state knowingly accepts the benefits derived from unconstitutional behavior, . . . then the conduct can be treated as state action." (citation omitted) (internal quotation marks omitted)); *see also Kirtley*, 326 F.3d at 1093-94 (finding it

Page 12 - OPINION AND ORDER

difficult to see "how any unconstitutional act by the guardian would possibly provide benefits to the state").

Accordingly, for the reasons set forth above, I find that plaintiffs do not state a plausible claim that Farley acted under color of state law.[5] Consequently, Farley's motion to dismiss is granted.

## II. Failure to State a Claim

Farley also argues that the court should dismiss the third amended complaint on the ground that it fails to state valid claims to relief. Specifically, with regard to the substantive due-process claim, Farley states that she "is unaware of any case that holds that the adult children of an infirm parent, already living in an assisted living facility, who were found unsuitable to serve as guardians, retain a liberty interest that is implicated by conduct inherent in the guardianship role." Farley's Memo. in Support of Motion to Dismiss, #63, at 20. With regard to the retaliation claim, Farley argues that plaintiffs "have not alleged any plausible facts that might connect [Farley's decision to move Alfano and limit visitation] to [p]lainitffs' attempts to become

---

[5] Farley also requests that the court dismiss the third amended complaint pursuant to the *Rooker-Feldman* doctrine. I am not inclined to decide the motion on such basis because, despite plaintiffs' repeated opportunities to amend their complaint, the exact factual basis of the complaint remains unclear. I note, however, that although plaintiffs claim that the case arises out of events occurring between December 2010 and February 2011—after the state-court judge appointed Farley as guardian—much of plaintiffs' third amended complaint contains allegations undermining the state-court judgment appointing Farley as guardian. Specifically, there are numerous allegations that Farley and Szcczepanski, acting on behalf of the ODVA, had ex parte communications with the state-court judge, which caused the state-court judge to appoint Farley as guardian. *See, e.g.*, Third Amended Complaint, #58, ¶ 130. That is, plaintiffs allege that Farley and the ODVA, and possibly the state-court judge who appointed Farley, conspired to deprive plaintiffs of their constitutional rights, that this conspiracy began before the guardianship proceeding, and that Farley's appointment was in furtherance of the conspiracy. If these allegations were sufficient to state a claim that Farley acted under color of state law, I would dismiss this case under the *Rooker-Feldman* doctrine.

Page 13 - OPINION AND ORDER

guardian more than a year earlier, or any other protected act by them." *Id.* at 24. Plaintiffs respond that they have stated a plausible claim under the Fourteenth Amendment because there is a fundamental liberty interest in the parent-child relationship and because Farley's conduct "shocks the conscience." Plaintiffs' Resistance to Motion to Dismiss, #72, at 15. Plaintiffs did not respond to Farley's arguments regarding the retaliation claim.

### A. Substantive Due Process (First Claim)

Under the first claim, plaintiffs allege that defendants violated plaintiffs' Fourteenth Amendment substantive due-process rights by interfering with plaintiffs' relationship with their father. "Substantive due process protects individuals from arbitrary deprivation of their liberty by government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-49 (1998)). "[T]o establish a constitutional violation based on substantive due process, [a plaintiff] must show both a deprivation of her liberty and conscience shocking behavior by the government." *Id.*; *see also Emmert Indus. Corp. v. City of Milwaukie*, 450 F. Supp. 2d 1164, 1175 (D. Or. 2006) ("Thus, to make out a substantive due process claim, [the plaintiff] must show two elements: a protectible interest and egregious official conduct."), *aff'd*, 307 F. App'x 65 (9th Cir. 2009). The Ninth Circuit has recognized that an adult child has a constitutionally protected liberty interest in the companionship and society of his or her parent. *See Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th Cir. 1987) ("Both case law and legislative history . . . lead us to the conclusion that Mr. Smith's adult and minor children

Page 14 - OPINION AND ORDER

had a cognizable liberty interest in their relationship with their father."), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999).[6]

In this case, plaintiffs have failed to state a plausible claim that Farley, or any other defendant, violated their substantive due-process rights. The conduct complained of—that is, moving Mr. Alfano to another facility and restricting his phone calls and visitation—did not deprive plaintiffs of their relationship with their father. Plaintiffs have cited no case law, and I am aware of none, suggesting that such limited interference with a constitutionally protected relationship is sufficient to rise to the level of a substantive due-process violation, particularly where a guardian was appointed and empowered to take the actions at issue. Accordingly, plaintiffs' first claim is dismissed.

### B.      Retaliation (Second and Third Claims)[7]

Under the second and third claims, plaintiffs allege that defendants retaliated against plaintiffs for exercising their right to object to the care and treatment of their father "by restricting [plaintiffs'] visits, removing [Mr.] Alfano's phone, taking [away] his phone privileges,

---

[6] While Farley suggests that a recent Ninth Circuit case has called into question the continued viability of *Smith*, I am bound by Ninth Circuit case law unless and until it is overruled. *See* Farley's Memo. in Support of Motion to Dismiss, #63, at 23.

[7] In her memorandum in support of the motion to dismiss, Farley contends that the first and third claims are "indistinguishable" and that both fail on the basis that the constitutionally protected relationship between an adult child and his or her parent is not "implicated by conduct inherent in the guardianship role." Farley's Memo. in Support of Motion to Dismiss, #63, at 20. Farley then construes the second claim as a First Amendment, rather than a Fourteenth Amendment, retaliation claim. *See id.* at 24. In their resistance, plaintiffs explain that the second and third claims are both retaliation claims—one arising under the Fourteenth Amendment and one arising under the First Amendment. As noted above, plaintiffs' third amended complaint is far from a model of clarity and it is unsurprising that Farley was unable to decipher the exact nature of plaintiffs' claims.

Page 15 - OPINION AND ORDER

drugging [Mr.] Alfano, taking away his mobility and then filing false reports to the court point[ing] the blame at the family." Third Amended Complaint, #58, ¶ 137. Plaintiffs allege that these retaliatory acts violated their rights under the Fourteenth Amendment (the second claim) and the First Amendment (the third claim). Plaintiffs acknowledge that the third claim, alleging a violation of the First Amendment, may "be the more appropriate vehicle for the retaliation claims," but they fail to brief the law supporting either claim. Plaintiffs' Resistance to Motion to Dismiss, #72, at 10.

As an initial matter, I agree with plaintiffs that their retaliation claim is properly construed as a First Amendment, rather than a Fourteenth Amendment claim, and, therefore, I dismiss plaintiffs' second claim. *See Hufford v. McEnaney*, 249 F.3d 1142, 1151 (9th Cir. 2001) (finding that the First Amendment, as opposed to the "'more subjective standard of substantive due process,'" governed the plaintiff's claim that he was discharged in retaliation for reporting misconduct by coworkers (citation omitted)); *see also Lalack v. Oregon*, No. 3:11-CV-01285-BR, 2013 WL 819789, at *12 (D. Or. Mar. 5, 2013) ("Because the First Amendment provides explicit protection for the right to free speech, Plaintiff may not base a substantive due-process claim on a violation of her right to free speech."). Thus, I turn to consider plaintiffs' third claim, alleging that defendants retaliated against plaintiffs in violation of the First Amendment.

To demonstrate retaliation in violation of the First Amendment, a plaintiff must show three things:

> (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

Page 16 - OPINION AND ORDER

*Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (footnote omitted).

Plaintiffs' retaliation claim fails on several grounds. First, plaintiffs did not resist Farley's motion to dismiss the retaliation claim and I find it appropriate to dismiss such claim on this basis alone. Second, the third amended complaint fails to adequately identify what constitutionally protected activity plaintiffs engaged in and, moreover, fails to adequately plead that any adverse action was a response to plaintiffs' constitutionally protected activities. While plaintiffs generally allege that they "wrote letters [to] their Senator and began to file complaints with the Oregon Ombudsman and other community based investigative agencies," Third Amended Complaint, #58, ¶ 89, they fail to include a time frame during which plaintiffs made these complaints and fail to allege that Farley, or any other defendant, was aware plaintiffs made such complaints. Furthermore, although plaintiffs allege that Farley, purportedly at the ODVA's behest, restricted their visits and phone contact with Mr. Alfano, plaintiffs do not identify any constitutionally protected activity that preceded these allegedly retaliatory acts. In sum, the third amended complaint fails to sufficiently connect defendants' alleged misconduct with the infringement of plaintiffs' First Amendment rights. Accordingly, plaintiffs' third claim is dismissed.

### C.     Summary

In light of the foregoing, I find that plaintiffs have failed to plead plausible claims that Farley, or any other defendant, violated their constitutional rights. At their core, plaintiffs claims appear to be state tort claims masquerading as federal civil-rights claims. Accordingly, plaintiffs' third amended complaint is dismissed in its entirety.

///

### III. Immunity

Alternatively, I grant Farley's motion to dismiss on qualified-immunity grounds. Even if plaintiffs have sufficiently alleged state action and violations of their constitutional rights, such rights were not clearly established. *See Reichle v. Howards*, 132 S. Ct. 2088, 2093-94 (2012) (discussing the "clearly established" prong of the qualified-immunity analysis); *Saucier v. Katz*, 533 U.S. 194, 20102 (2001) (same), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). As noted above, there is a dearth of case law suggesting that the conduct at issue implicated plaintiffs' constitutionally protected relationship with their father and, in the absence of any such authority, Farley is entitled to qualified immunity.

### CONCLUSION

For the reasons set forth above, Farley's motion to dismiss (#62) and request for judicial notice (#65) are granted. Because plaintiffs have failed to state plausible claims to relief, the third amended complaint (#58) is dismissed as to all defendants. In light of the findings above and the number of times plaintiffs have already amended their complaint, further amendment is unwarranted under Federal Rule of Civil Procedure 15(a). Accordingly, the third amended complaint is dismissed with prejudice and without leave to amend and a final judgment should be prepared.

Dated this 29th day of April, 2014.

Honorable Paul Papak
United States Magistrate Judge